Filed 9/22/15  In re Isaiah T. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ISAIAH T., a Person Coming Under the Juvenile Court Law. | B258941 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK05756) |
| Plaintiff and Respondent, | |
| v. | |
| IRMA N., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Teresa Sullivan, Judge.  Appeal dismissed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Irma N., mother of Isaiah T., appeals from the jurisdiction and disposition orders of the juvenile court concerning the child. She challenges the sufficiency of the evidence to support two of the five sustained counts. (Welf. & Inst. Code, § 300, subds. (b) & (d).)[1] We dismiss the appeal for lack of justiciability.

FACTUAL AND PROCEDURAL BACKGROUND

At the time the Department of Children and Family Services (the Department) detained Isaiah, mother's other minor child, Jasmine T., was living with the children's father, Francisco T., in Utah. The Department released Isaiah to father's care.[2]

Mother has an extensive history with the Department, dating to 2003. She participated in voluntary family maintenance programs from 2010 to 2011, 2008, 2007, and 2003.

In June 2014, the Department filed the petition at issue, alleging that mother and her boyfriend Uriel G. have a history of engaging in violent altercations (count b-1); mother engaged in a violent altercation with Isaiah's adult sibling, Stephanie T. (count b-2); mother has a history of mental and emotional problems including a diagnosis of bipolar disorder with manic episodes (count b-3); and Isaiah's mother allowed Isaiah to reside with Uriel G., who mother knew sexually abused Jasmine (counts b-4/d-1). (§ 300, subds. (b) & (d).)

In its jurisdiction status review report, the Department recommended that the court sustain the petition, that Isaiah remain released to father, and that the juvenile court close the case with a family law order awarding mother monitored visitation.

At the jurisdiction hearing, mother's attorney requested that mother be given transportation assistance and provided with a domestic violence shelter as she was moving from house to house. Father's attorney asked that father be given full legal custody if Isaiah would be visiting mother in shelters. The Department noted that it could

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] The juvenile court found that Francisco T. was Isaiah's presumed father.

not supervise the case without an interstate compact as father lives in Utah. The juvenile court found that "[m]other has what appears to be pretty serious depression and mental health issues that are going untreated." The court found the circumstances regarding the extensive violence and mother's failure to understand the impact of her violence on her children, "*is quite remarkable.*" (Italics added.) The court also recognized the Department's "really extraordinary efforts prior to an intervention to try to help the mother to address these issues without this type of Court's intervention and removal of the children." The court sustained the petition as described above and continued the disposition hearing while the Department prepared a supplemental report containing an interview with father about plans.

The Department's supplemental report reflected that a children's social worker went to visit father in Utah. Father's place was clean and had no safety hazards. Utilities were in working order. Father indicated that he planned to remain in Utah and would keep Isaiah with him and Jasmine. He was in the process of adding the child to his medical plan. Father was under the impression that the juvenile court would terminate its jurisdiction. Isaiah reported father was nice to him and he felt safe there. Isaiah spoke to mother three times a day and father did not view future visitation as an issue. Meanwhile, mother told the social worker that " 'even if it hurts I think it is best that he [Isaiah] stays with his father.' " She planned to have visits with the child. The supplemental report referred to the jurisdiction report's recommendation to terminate jurisdiction with a family court order, and added that the parents be awarded joint legal custody, father be given sole physical custody of Isaiah, and a visitation schedule be arranged once a monitor is approved.

At the disposition hearing, mother's counsel stated that mother was in "full agreement with the recommendation." The juvenile court considered the Department's exhibits, which were its detention, jurisdiction/disposition, and addendum reports and attachments, and the sustained allegations. Stating it was "going to follow the Department's recommendation at this time," the court removed Isaiah from mother's custody. (§ 361, subd. (c).) The court determined that father was the parent of Isaiah

with whom the child was not residing at the time of removal, that father desired custody, and that placement with father would not be detrimental to the child. (§ 361.2, subd. (b)(1).) Then, finding that the circumstances that justified the initial assumption of jurisdiction no longer existed and would not likely exist if supervision were withdrawn, the court terminated its jurisdiction. Mother appealed.

DISCUSSION

Mother's sole assignment of error is that the juvenile court erred in sustaining the counts alleging sex abuse because of insufficient supporting evidence. She does not challenge the other grounds for jurisdiction, namely domestic violence and her history of mental and emotional problems, all of which endanger Isaiah's physical health and safety and place him at risk of harm. (§ 300, subd. (b).)

The Department contends that the issue of counts b-4 and d-1 is not justiciable because we are unable to give mother any relief. The justiciability doctrine generally counsels against deciding an appeal unless it involves "a present, concrete, and genuine dispute as to which the court can grant effective relief." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.) The Department argues that as mother does not challenge the order sustaining the counts concerning domestic violence and emotional problems, the juvenile court has jurisdiction over Isaiah irrespective of what happens on appeal to counts b-4 and d-1. Therefore, the Department argues, mother's jurisdictional challenge is nonjusticiable.

Mother repeatedly acknowledges that even if we strike counts b-4 and d-1, the juvenile court will retain jurisdiction over Isaiah based on the other counts. She nonetheless argues that we should address her contention because the ruling on the sex abuse counts "can have negative consequences for disposition, reunification, and if future dependency actions are filed." She argues she is prejudiced by the presence of counts b-4 and d-1 in the jurisdictional ruling because it "*could have* been one of the reasons that the juvenile court placed Isaiah with father and terminated juvenile court jurisdiction pursuant to section 361.2, subdivision (b)(1) rather than [to] order reunification services

4

for mother under section 361.2, subdivision (b)(3)." (Italics added.) Mother has not demonstrated prejudice.

Section 361.2 instructs that when there is a non-custodial parent who wishes to assume custody of the child, the court *must* place the child with the non-custodial parent absent a finding of detriment. (*Id.*, subd. (a).) Father requested custody; the court found no detriment. Mother does not challenge this finding.

Once the juvenile court determines that the noncustodial parent wishes custody, the court has a choice whether to terminate jurisdiction (§ 361.2, subd. (b)(1)) or order reunification services to the parent who is named in the petition (*id.*, subd. (b)(3)). "When deciding whether to terminate jurisdiction, the court must determine whether there is a need for continued supervision . . . ." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1451.) The court must make this finding on the record or in writing of the basis for its decision under section 361.2, subdivision (b). (*Id.*, subd. (c).)

Here, the juvenile court stated on the record the reasons why it opted to terminate jurisdiction under section 361.2, subdivision (b)(1). The court stated it was "going to follow the Department's recommendation at this time," clarified that Isaiah was living in Utah with father who already had custody of Jasmine, and found that there was no need for continued supervision. The sex abuse counts did not play a role in the juvenile court's reasoning.

Although the juvenile court indicated it was considering the sustained counts in fashioning its disposition order, it also stated it considered the Department's reports. The court knew that mother did not have a place to live and wished to move to a domestic violence shelter. She had severe mental health and violence issues that were resistant to the Department's numerous attempts to remedy. Mother acknowledged that placing Isaiah with father was the best thing for him. The court heard that the geographic distance would make visitation difficult to supervise. The Department twice recommended that juvenile-court jurisdiction be terminated and that father be given physical custody. Most important, mother was in accord with the recommendation to terminate jurisdiction. These are the factors on which the juvenile court relied in finding

5

that supervision was no longer necessary and terminating jurisdiction. Stated otherwise, mother has failed to persuade us that in terminating jurisdiction the juvenile court opted to forego reunification because of the sex abuse allegation. Mother has not demonstrated that she was prejudiced by the order sustaining counts b-4 and d-1 in addition to the other three counts.

"[A]n appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]" (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492.) Mother does not challenge the jurisdictional findings involving her mental health or domestic violence. Thus, any decision we might render on the allegations involving Isaiah's risk of sex abuse will not result in a reversal of the order taking jurisdiction over Isaiah. "Under these circumstances, the issues [mother's] appeal raises are ' "abstract or academic questions of law" ' [citation], since we cannot render any relief to [mother] that would have a practical, tangible impact on [her] position in the dependency proceeding. Even if we found no adequate evidentiary support for the juvenile court's findings with respect to [counts b-4 and d-1], we would not reverse the court's jurisdictional and dispositional orders," nor vacate the court's assertion of personal jurisdiction over mother, or its order terminating jurisdiction. (*Ibid.*)

6

DISPOSITION

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.

7